UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:14-CV-948-JHM-CHL


NICOLE MYERS,                                                                    Plaintiff,

v.

ANTHEM LIFE INSURANCE COMPANY,                                Defendant.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for discovery ("Motion for "Discovery") (DN

14) filed by Plaintiff Nicole Myers ("Myers").  The Motion for Discovery has been extensively

briefed by both parties.  Among several related filings is a motion to strike (DN 36) filed by

Defendant Anthem Life Insurance Company ("Anthem").  Both motions are ripe for review.  For

the following reasons, Myers's Motion for Discovery (DN 14) is GRANTED IN PART and

DENIED IN PART; Myers's motion for sanctions within DN 35 is DENIED; and Anthem's

motion to strike (DN 36) is DENIED AS MOOT.


BACKGROUND

At the heart of this dispute is a disagreement regarding the scope of discovery in ERISA

cases.  Myers asserts a breach of contract claim pursuant to ERISA, specifically 19 U.S.C. §

1132(a)(1)(B), in relation to Anthem's denial of her claim for benefits under a long-term

disability policy.[1]  Myers filed the Motion for Discovery due to her conviction that she is entitled

---

[1]      Myers initially asserted a second claim against Anthem that was based on 29 U.S.C. § 1132(a)(3).  Chief
Judge Joseph H. McKinley, Jr. granted a partial motion to dismiss filed by Anthem, thereby disposing of the Section
1132(a)(3) claim.   (DN 20 (motion to dismiss); DN 31 (memorandum opinion and order granting motion to
dismiss).)  Myers's sole surviving claim is the Section 1132(a)(1)(B) claim.   Consistent with Chief Judge
McKinley's ruling, the undersigned Magistrate Judge subsequently granted a motion to strike (DN 21) filed by
Anthem, that sought to strike all references to the Section 1132(a)(3) from the Motion and related briefing.  (See DN
32 ("Any and all references to a claim pursuant to § 1132(a)(3) are hereby STRICKEN from Myers's reply (DN 18)
in support of her motion for discovery.  Anthem need not respond to any discovery requests that are expressly
related to § 1132(a)(3), and Myers shall not seek any additional discovery on the basis of the now-dismissed §

to discovery in particular areas beyond the administrative record.  Following the filing of the

Motion for Discovery, Anthem filed a response in opposition and Myers filed a reply.  (DN 16,

18.)  Myers subsequently filed three notices of supplemental authority (DN 22, 33, 39), one of

which sparked the filing of an additional response (DN 34) and reply (DN 35).  Finally, Anthem

filed the motion to strike (DN 36), requesting that the Court strike Myers's reply (DN 35) in

support of her first notice of supplemental authority (DN 33) on the basis that the reply amounts

to a meritless and improperly pleaded motion for sanctions.  Myers filed a response in opposition

to the motion to strike, and Anthem filed a reply.  (DN 38, 40.)

## 1. **Motion for Discovery**

### A. Procedural History

On March 23, 2015, the Court entered a scheduling order (DN 9) in this case.  With

respect to discovery, the scheduling order provides in its entirety, "No discovery shall be

permitted at this time.  After reviewing the Administrative Record, plaintiff may move the Court

to allow discovery on a discrete issue or issues."  (DN 9, ¶ 3.)  Thereafter, Defendant timely filed

– under seal – the administrative record.  (DN 10-12.)  Myers then filed the Motion for

Discovery and on the same day served on Anthem her discovery requests.  (*See* DN 14, 14-1, 14-

2.)  The Court recounts this history for two reasons.  First, Anthem contends that by serving

discovery requests without first moving the Court to permit discovery on discrete issues beyond

the administrative record, Myers violated the terms of the scheduling order.  Anthem is correct.

In serving discovery at a time when "[n]o discovery shall be permitted," Myers disobeyed DN 9.

However, the Motion for Discovery is in keeping with the spirit of the scheduling order, if not

---

1132(a)(3) claim.").  Accordingly, the instant analysis addresses the motion to strike solely as it relates to Myers's
Section 1132(a)(1)(B) claim; it does not address the Section 1132(a)(3) claim.

the letter, in that the motion seeks the Court's approval of the requests that Myers has served on Anthem.  Moreover, given the staggering amount of time and resources that both parties have already put into this discovery dispute, to require Myers to file a distinct motion seeking approval of its discovery requests and then re-serve approved requests on Anthem would only serve to further delay the progression of this case.

Second, both parties acknowledge that Anthem has not responded to Myers's discovery requests both for the reasons asserted in its response (DN 16) to the Motion for Discovery and because of its contention that service of the discovery requests violated the scheduling order as described above.  In any event, because Anthem has not responded to the discovery requests, the Court is left to address the Motion for Discovery without being able to address any existing, specific objections by Anthem.  *Cf. Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 408 (W.D. Ky. Aug. 5, 2015) (stating in background section basis for defendant's objections to discovery requests).

      B.  <u>Myers's Motion</u>

Myers begins her Motion for Discovery by acknowledging that the Court's review in ERISA cases is generally limited to the administrative record.  However, she argues, discovery related to Section 1132(a)(1)(B) claims is broader in scope; it permits discovery of "evidence outside the record . . . offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part."  (DN 14 at 1 (quoting *Johnson v. Conn. Gen. Life Ins. Co.*, 324 Fed. Appx. 459, 466 (6th Cir. 2009) (additional citations omitted)).)  Myers contends that discovery is appropriate in this case because there is an inherent bias or conflict of interest where, as here (she argues), the

3

same entity both determines whether an employee is eligible for benefits and makes benefits payments.  Myers argues that so long as she makes an initial allegation of a conflict of interest, that is, that Anthem is the entity responsible for both determining eligibility for benefits and paying any benefits, then she is entitled to discovery on particularized areas of inquiry.

The specific areas of discovery to which Myers argues she is entitled include the following: (1) the identities of the employees who were directly involved in Myers's claims and appeals process, as well as "the extent to which those persons may have been pressured to render particular outcomes;" (b) the structure of Anthem's claims and appeals units; (c) Anthem's efforts to eliminate bias and promote accuracy; and (d) third-party medical reviewers used by Anthem in relation to Myers's claim and appeal.  (DN 14 at 5.)

C.  Anthem's Response

Anthem filed a lengthy response in opposition (DN 16) to the Motion for Discovery. Anthem states that while Myers alleges in her Motion for Discovery that Anthem "has a structural conflict of interest, which entitles her to discovery . . . [she] has never pled in her bare-bones complaint or stated in any other filing to this Court *how* a conflict of interest led to an arbitrary denial of benefits, nor has she ever pled or otherwise articulated how the process of Anthem's denial violated her rights under the plan."  (DN 16 at 2.)  Anthem contends that discovery beyond the administrative record is inconsistent with ERISA's goal of providing a mechanism for employees to resolve benefits disputes "inexpensively and expeditiously."  (*Id.* at 3 (quotations omitted).)

With respect to expanded discovery due to a conflict of interest, Anthem argues that this district has limited such discovery to that which would assist the court in determining whether a

4

conflict of interest affected the plan administrator's decision.   Anthem contends that Myers should be limited to discovery requests related to which "she can articulate the relevancy based on the circumstances of the case and the administrative record."  (*Id.* at 6.)  Anthem cites a 2012 decision from this district, *Clark v. American Electrical Power Systems Long Term Disability Plan*, 871 F. Supp. 2d 655, 658-59 (W.D. Ky. 2012), in support of a list of what it contends are permissible areas[2] of discovery in this case.   (*Id.* at 7.)   According to Anthem, Myers seeks discovery well beyond[3] those permissible areas of inquiry.   Anthem asserts that in other decisions, this Court has "identified areas of inquiry that are impermissible," including several areas that go to "reviewer credibility." (DN 16 at 9-10 ("[D]iscovery is limited to the possibility of a financial bias on the part of the administrator and the payor, and discovery is not permitted on topics intended to challenge the specific qualifications of the person or persons actually performing the review, so as to collaterally challenge the determination on that basis.") (quoting *Clark Am. Elec. Power Sys. Long Term Disability Plan*, 871 F. Supp. 2d 655, 661 (W.D. Ky. 2012)).

---

[2]      Anthem identifies the following as "permitted areas of inquiry:" (1) incentive, bonus or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims; (2) contractual connections between plan administrator/payor and the reviewers utilized in plaintiff's claim, and financial payments paid annually to the reviewers from the administrator/payor; (3)statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted; (4) the number of times the reviewers found the claimants able to work in at least a sedentary occupation or found that claimants were not disabled; and (5) documentation of administrative processes designed only to check the accuracy of grants or claims (limited to claims guidelines actually consulted to adjudicate the plaintiff's claim.  (DN 16 at 7.)

[3]      Anthem identifies the following areas as "far beyond those permissible areas of inquiry:" (1) the basis for an assertion of discretionary review; (2) the amount of the monthly benefit the Plaintiff should receive; (3) the identity of individuals involved in her claims handling; and (4) any and all reasons for the denial of the Plaintiff's claim and appeal.  (*Id.*)

D. Myers's Reply

Myers filed a detailed reply (DN 18) in support of the Motion for Discovery. Myers argues that a case upon which Anthem strongly relies in its response, *Crider v. Life Ins. Co. of North America*, 2008 U.S. Dist. LEXIS 6715 (W.D. Ky. 2008), is of limited relevance due to a subsequent Supreme Court case, *MetLife Ins. Co. v. Glenn*, 554 U.S. 105 (2008). Myers contends that Anthem inappropriately attempts to place on her a burden of demonstrating entitlement to discovery, when in reality she need only make an allegation of bias, which (she argues) she has successfully done in this case. Myers argues that the burden now shifts to Anthem to substantiate its objections to responding in full to her discovery requests. (DN 18 at 3.)

As the Court discusses each of the requests below, it is not necessary to recount here Myers's arguments with respect to each discovery requests. It suffices to say that Myers argues that each of her discovery requests is proper under Sixth Circuit precedent.

## 2. Supplemental Authority

Following her submission of the reply, Myers filed three notices of supplemental authority. (*See* DN 22 (regarding *Gluc*, 309 F.R.D. 406); DN 33 (regarding *Davis v. Hartford Life & Accident Ins. Co.*, 2015 U.S. Dist. LEXIS 158313 (W.D. Ky. Nov. 24, 2015)); DN 39 (regarding *Owens v. Liberty Life Assurance Co. of Boston*, Civil Action No. 4:15-cv-00071-JHM (W.D. Ky. Jan. 15, 2016)).) In its second notice of supplemental authority (DN 33), Myers brings to the Court's attention *Davis v. Hartford Life & Accident Ins. Co.*, 2015 U.S. Dist. LEXIS 158313 (W.D. Ky. Nov. 24, 2015), a memorandum opinion and order granting an ERISA plaintiff's motion to compel discovery. The notice of supplemental authority includes lengthy

excerpts from the *Davis* opinion, all of which, according to Myers, support her claim that she is entitled to substantive responses to each of her specific discovery requests.

Anthem filed a response (DN 34) to Myers's notice of supplemental authority. Anthem argues that the *Davis* case is distinguishable from this case. Specifically, Anthem argues that in *Davis*, the plaintiff made numerous allegations in the complaint that entitled her to relatively broad discovery for an ERISA case, whereas in this case, Myers's complaint is less detailed. Therefore, Anthem contends, the justification for the broader scope of discovery permitted in *Davis* Myers is not present here.

Myers then filed a reply (DN 35) in support of her use of *Davis* as supplemental authority. In the reply, Myers characterizes Anthem's conduct during the discovery process as deliberately obstructive, not in good faith, and contrary to recent binding precedent from this district. Myers requests that the Court "put a halt to Anthem's continued obstruction and delay" by granting her discovery motion and sanctioning Anthem, pursuant to Rules 11 and 26 of the Federal Rules of Civil Procedure and 29 U.S.C. § 1927, by awarding her related attorneys' fees and costs. (DN 35 at 3.)

### 3. **Motion to Strike**

Anthem then filed a motion to strike (DN 36) Myers's reply (DN 35) in support of her use of *Davis* as supplemental authority. Anthem contends that the reply has no merit and is effectively an improperly pled Rule 11 motion for sanctions. Specifically, Anthem argues that pursuant to an order entered on March 19, 2015 (DN 9), the Court permitted Myers to seek permission, after reviewing the administrative record, to move forward with discovery on a discrete number of issues. Instead, Anthem argues, Myers proceeded to serve discovery requests

on a wide range of topics well beyond the scope of the Court's orders and to file the Motion for Discovery.  Now, Anthem contends, Myers seeks to sanction Anthem for complying with the Court's order regarding discovery.

Moreover, Anthem argues, the motion is deficient pursuant to Rule 11.  Anthem argues that a Rule 11 motion for sanctions must be made by separate motion rather than in conjunction with another pleading, and therefore, it was improper for Myers to include her request for sanctions in her reply in support of her supplemental authority.  Anthem further states that Myers failed to comply with Rule 11 by filing her motion for sanctions without first serving it on Anthem.  Anthem argues that both its decision to withhold responses to Myers's discovery requests and its use of case law in its arguments in opposition to the Motion for Discovery were reasonable under the circumstances, and thus, sanctions are not appropriate under either Rule 11 or Rule 26(g).  Finally, Anthem argues that it has not "multiplie[d] the proceedings . . . unreasonably and vexatiously" such that an award of costs would be warranted pursuant to 28 U.S.C. § 1927.  (DN 36 at 7 (quoting *Johnson v. Zimmer Holdings, Inc.*, 73 F. Supp. 3d 814, 818 (E.D. Ky. 2014) (citing 28 U.S.C. § 1927).)

In her response (DN 38), Myers repeats what is becoming the refrain of this case: that the opposing party – in this instance, Anthem – is responsible for causing undue delay and making arguments that are not supported by binding case law.  Myers contends that the motion to strike is improper because such motions may only be filed in relation to "pleadings," whereas here, the motion to strike is directed at the request for fees and costs contained in Myers's reply in support of her notice of supplemental authority, which should not be construed as a pleading.  Myers again requests that the Court award her fees and costs as requested in her reply (DN 35), as well

as in relation to her response to the motion to strike.  Myers argues that her request for sanctions was proper because she brought her request pursuant to Rule 11(c)(3), which permits the Court to award sanctions on its own initiative, and does not involve the Rule 11(c)(2) requirements of a separate motion and "safe harbor" filing.

Finally, Anthem filed a reply (DN 40) in support of its motion to strike.  The reply reiterates Anthem's arguments in its motion to strike and need not be described further here.

## DISCUSSION

### 1. Motion for Discovery

#### A. Legal Standard

##### i. Discovery in Matters Governed by ERISA

The initial question that must be addressed before turning to Myers's individual discovery requests is whether she may obtain any discovery outside of the administrative record. "Generally, parties in a civil action may obtain discovery regarding any unprivileged matter that is relevant to the claim or defense of any party." *Likas v. Life Ins. Co. of N. Am.*, 222 Fed. Appx. 481, 485 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(1)).  In ERISA actions, however, discovery is "substantially limited." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *2 (citing *Likas*, 222 Fed. Appx. at 485).  "Discovery under ERISA is a largely unsettled area of law as federal courts continue to vary the scope of discovery permitted in ERISA actions even after the Supreme Court case on the matter, *Metro Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008)." *Id.* (citing *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510 (W.D. Ky. 2010)) (internal citation omitted).

Typically, in ERISA actions, discovery is not permitted outside of the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J.,

concurring).  "This rule serves 'a primary goal of ERISA [which is] to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously,' *Perry v. Simplicity Eng'g. Div. of Lukens Gen. Indus.*, 900 F.2d 963, 967 (6th Cir. 1990), 'and any routine consideration of evidence outside that presented to plan administrators would undermine Congress's intent.'"  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *3 (quoting *Thornton v. W. & S. Life Ins. Co. Flexible Benefits Plan*, 2010 U.S. Dist. LEXIS 7221, *1 (W.D. Ky. Jan. 28, 2010)).  "An exception is recognized, however, when evidence outside the record is 'offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'"  *Johnson*, 324 Fed. Appx. at 466 (quoting *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)).

Having established that limited discovery may be permitted in an ERISA case where a claimant alleges bias on the part of the plan administrator, as Myers alleges in this case, the Court's next task is to identify the threshold for a claimant to establish a right to such discovery. "Prior to the Supreme Court's decision in *Glenn*, courts in the Sixth Circuit did not have a uniform standard for what triggered the exception to the general rule that under ERISA no discovery may occur outside the administrative record." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *4 (citing *Busch v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 101881 at *1 (E.D. Ky. Sept. 27, 2010); *Thornton*, 2010 U.S. Dist. LEXIS 7221 at *2; *Crider v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 6715, *3-4 (W.D. Ky. Jan. 29, 2008)).  In *Glenn*, the Supreme Court provided guidance on the issue, holding that "when a plan administrator both evaluates claims for benefits and pays benefits claims," there is a *per se* conflict of interest.  *Glenn*, 554 U.S. at 112.

10

The Supreme Court further stated in *Glenn* that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict . . . [because] special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress." *Id.* at 116.  The Sixth Circuit has provided minimal guidance in the aftermath of *Glenn*; however, "it is logical to assume that the Supreme Court meant for lower courts to allow some discovery beyond the administrative record when the conflict of interest is present." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *5 (quoting *McQueen v. Life Ins. Co. of N. Am.*, 595 F. Supp. 2d 752, 755 (E.D. Ky. 2009)).

District courts in the Sixth Circuit have taken two contrasting approaches following *Glenn*.  "Some courts have found that the mere presence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record." *Id.* at *6 (citing *Mullins*, 267 F.R.D. at 512).  These courts "reason that the act of denying discovery until there has been an initial showing of bias 'essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery.'" *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 786-87 (E.D. Ky. 2014) (quoting *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009)).  Conversely, some courts "have found that an allegation of bias alone is insufficient[;] [i]nstead, a plaintiff must make a sufficient factual showing to expand discovery beyond the administrative record." *Id.* at 787.

In the November 2015 *Davis* opinion, which was entered by Senior United States District Judge Thomas B. Russell and which is the subject of Myers's second notice of supplemental authority (DN 33), the Court stated as follows: "Having reviewed both approaches, this Court is

persuaded by the case law followed by most fellow courts in Kentucky that the mere existence of an evaluator/payor conflict of interest is sufficient to allow discovery outside of the administrative record." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *8.  Further, the Court "caution[ed] that discovery is to be limited to the conflict of interest and allegations of bias." *Id.* at *9 (citing *Brainard v. Liberty Life Assurance Co. of Boston*, 2014 U.S. Dist. LEXIS 178492, *4 (E.D. Ky. Dec. 30, 2014)).  Likewise, this Court has considered the two approaches employed by district courts in the Sixth Circuit and concludes that the "mere existence" of a conflict of interest is sufficient to allow *some* discovery outside of the administrative record.

"Generally, courts have allowed discovery regarding whether (i) there is a history of biased claim denials; (ii) the employer has made measures to reduce bias and promote accuracy; and (iii) company policies reward or encourage denials." *Kasko*, 33 F. Supp. 3d at 788 (citing *Raney v. Life Ins. Co. of N. Am.*, 2009 U.S. Dist. LEXIS 34098, *3 (E.D. Ky. Apr. 20, 2009)). As did the *Davis* court, this Court looks to another recent decision from our district, *Gluc*, for a particularized list of "permitted areas of inquiry – topics on which discovery related to an inherent conflict of interest may be had by an ERISA plaintiff." *Busch*, 2010 U.S. Dist. LEXIS 101881 at *9 (quoting *Mullins*, 267 F.R.D. at 513).  That list includes the following:

- "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

- "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim . . . and financial payments paid annually to the reviewers from the [administrator/payor]." *Pemberton v. Reliance Standard Life Ins. Co.*, 2009 U.S. Dist. LEXIS 2070, (E.D. Ky. Jan. 13, 2009).

12

- "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

- "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

- "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate plaintiff's claims)."

*Gluc*, 309 F.R.D. at *17-18 (quoting *Bird v. GTX, Inc.*, 2009 U.S. Dist. LEXIS 106301, *8 (W.D. Tenn. 2009)).

Courts have also identified specific categories of inquiry that are *not* within the areas of permitted discovery:

> Courts typically refuse to permit discovery into areas falling under the general category of reviewer credibility.  *Thornton*, 2010 U.S. Dist. LEXIS at *3.   Areas such as employee pay records and personnel files are not discoverable. *Hays v. Provident Life and Acc. Life Ins. Co.*, 623 F. Supp. 2d 840, 845 (E.D. Ky. 2008) (citing *Myers*, 581 F. Supp. 2d at 915).   The professional background of claim reviewers; whether reviewers have civil or criminal claims for disciplinary action; or, the history of patient treatment by medical reviewers also is not subject to discovery. *Raney*, 2009 U.S. Dist. LEXIS 34098 at *3; *see also Pemberton*, 2009 U.S. Dist. LEXIS 2070 at *4 ("[I]nformation regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias [so that] the plaintiff is not entitled to discovery on these issues."); *Bird*, 2009 U.S. Dist. LEXIS 106301 at *3 (improper areas of inquiry include: personnel files, performance reviews and pay records of insurers' employees; and information regarding training and qualifications of reviewers).

*Gluc*, 309 F.R.D. at *18-19.

Bearing in mind the standard set forth above, the Court will move on to address the individual discovery requests propounded by Myers on Anthem.  This process is made more cumbersome by the absence of discovery responses – including objections – from Anthem due to

13

its refusal, albeit understandable, to respond to Myers's discovery requests before Myers obtained Court approval as to the contents of her discovery requests. To avoid further delay in this case, rather than require Myers to effectively move backward and adhere to the terms of DN 9, the Court rules in the instant memorandum opinion and order on Anthem's obligation to respond to each of Myers's interrogatories and requests for production. Rather than resort to guesswork as to which of Myers's discovery requests Anthem objects and the basis for any such objections, and in the hope of avoiding further delay in the progression of this case, the Court will address each and every discovery request propounded by Myers. The Court expects that this will provide sufficient explanation for the parties to move forward with the discovery process with minimal additional Court oversight. Nonetheless, Anthem retains the right to assert objections to Myers's discovery requests, provided that its objections are not inconsistent with the instant memorandum opinion and order.

## ii. Myers's Purported Instructions to Anthem

Before moving on to Myers's interrogatories and requests for production, the Court is compelled to address one issue common to all of her discovery requests. At the top of each page of Myers's interrogatories and requests for production appears a text box in which Myers purports to instruct Anthem as to certain obligations in relation to its discovery responses. The instructions provide as follows:

> **Please Note:** If Defendant is unclear or has questions concerning a specific request, as opposed to waiting until the expiration of the 30 day response period, Defendant's counsel should contact Plaintiffs' counsel at an early date to discuss any concerns and/or to obtain any clarification. Absent any inquiry from Defendant prior to the expiration of the 30 day response period, Defendant shall be deemed to have fully understood each request, to have not

14

> required any further clarification or explanation, and to have
> waived any objections to the request.

(*See* DN 14-1 at 3, *et seq.*; DN 14-2 at 3, *et seq.*)  With these instructions to opposing counsel, Myers purports to assume the role of the Court.  The Federal Rules of Civil Procedure and the Court are the relevant – and only – authorities for the parties' rights and responsibilities during the civil discovery.  Litigants and their counsel may not impose additional or inconsistent obligations on opposing parties.

The Rules do not require Anthem's counsel to contact Myers's counsel prior to the conclusion of the 30-day response period to discuss Anthem's objections.  Nor do the Rules provide that Anthem "shall be deemed" to have done any of the things included in the last sentence of Myers's instructions if its counsel does not contact Myers's counsel.  *See* Fed. R. Civ. P. 33(b)(2) ("The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.  A shorter or longer time may be stipulated to under Rule 29 *or be ordered by the court*.") (emphasis added); *id.* at (b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *see also* Fed. R. Civ. P. 34(b)(2)(A), (C).  In this case, the Court has not imposed any obligations on Anthem that would go beyond the scope of Rules 33 and 34; the Court certainly has not required Anthem to adhere to the additional terms that Myers purports to impose.

Accordingly, IT IS HEREBY ORDERED that Anthem may disregard the instructions that Myers purports to make in the text boxes that appear at the top of each page of her discovery requests.

B.  Interrogatories[4]

   i.  **No. 1.  Identify each person making and assisting with Defendant's Interrogatory answers.  For each person identified, state their full name, business address, employer, job title (description), and relationship to Defendant.[5]**

Interrogatory number 1 is a standard request for information regarding the individual(s) preparing the receiving party's answers to interrogatories and is permissible under Rule 33 of the Federal Rules of Civil Procedure.

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 1.

   ii.  **No. 2.   State each defense, including affirmative, Defendant is asserting or relying on in this action. For each defense, provide the material facts supporting said defense.**

Interrogatory number 2 is what is sometimes referred to as a "contention" interrogatory: it "seek[s] to clarify the basis for or scope of an adversary's legal claims."  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *15 (quoting *Starcher v. Corr. Med. Sys., Inc.*, 144 F.3d 418, 421 n.2 (6th Cir. 1998) (subsequent procedural history omitted)).   The "general view is that contention interrogatories are a perfectly permissible form of discovery, to which a response ordinarily would be required." *Starcher*, 144 F.3d at 421 n.2.   The *Davis* court provided the following guidance regarding contention interrogatories in the ERISA context:

> As one court stated in its opinion concerning discovery in an ERISA action, "[i]t is widely accepted that 'contention interrogatories' which ask a party to state the facts upon which it bases a claim or defense, are a permissible form of written discovery." *Alexander v. Hartford Life & Acc. Ins. Co.*, 2008 U.S. Dist. LEXIS 27210, *4 (N.D. Tex. Apr. 3, 2008).   Furthermore, Rule 33(a)(2) of the Federal Rules of Civil Procedure states that

---

[4]      At the top of each page of Myers's interrogatories and requests for production, she provides a

[5]      Myers's requests for production of documents and interrogatories are located in the record at DN 14-1 and 14-2, respectively.  All discovery requests reprinted herein can be found in those documents.

> "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). "[T]he purpose of the discovery rules is to bring to light the parties' positions in an informed and controlled manner that winnows down the resolution of a dispute" to show the factual and legal issues." *Burnett & Morand P'ship v. Estate of Youngs*, No. 3:10-CV-3-RLY-WGH, 2011 U.S. Dist. LEXIS 36916, 2011 WL 1237950, at *3 (S.D. Ind. Apr. 4, 2011). Therefore, when a party is asked to provide "contention type discovery [the party] must identify the witnesses and documents he/she has marshaled . . . and to help illuminate the issues to be resolved as the responses and answers are due." *Id.*

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *15-16.

Anthem must "be able to *generally explain* the factual basis for each . . . affirmative defense[] pled in its . . . answer." *Barkley v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 11928, *2-3 (N.D. Tex. Feb. 19, 2008). Anthem must provide Myers with an explanation of the factual basis for each affirmative defense. It is not sufficient to state that the factual bases for its defenses can be found in the administrative record. *See Davis*, 2015 U.S. Dist. LEXIS 158313 at *16-17 ("'A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also must specify where in the records the answer [can] be found.'") (citing Fed. R. Civ. P. 33(d); quoting *Mullins*, 267 F.R.D. at 514-15).

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 1.

> **iii.  No. 3.  If Defendant is asserting the Court's standard of review applicable to Plaintiff's benefit claim is anything other than de novo (i.e. that Defendant has discretionary authority):**
>
> > **a.  Identify each plan document, and the specific language, delegating discretionary authority to Defendant; and**
> >
> > **b.  Identify the individual who exercised discretion on Defendant's behalf, and provide their full-name, business address, employer, job title (description), and relationship to Defendant.**

17

Interrogatory number 3 relates to the standard of review applicable to this case.  Anthem takes issue with interrogatory number 3, stating that discovery as to the "basis for an assertion of discretionary review" is "far beyond the[] permissible areas of inquiry."  (DN 16 at 7.)   Myers states in her reply that if Anthem were to stipulate that the standard of review in this case "remains the default de novo standard, there is no need for discovery on the issue." (DN 18 at 6-7.)  "However, [Myers argues], if Anthem argues the standard has been altered, Mrs. Myers is entitled to investigate the factual basis for Anthem's contentions – to obtain appropriate discovery." (*Id.* at 7.)

"A denial of health benefits is to be reviewed by federal courts under a de novo standard, unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Shelby County Healthcare Corp. v. Majestic Star Casino, LLC.*, 2008 U.S. Dist. LEXIS 23314, *7 (W.D. Tenn. March 20, 2008) (citing *Anderson v. Great West Life Assurance Co.*, 942 F.2d 392, 395 (6th Cir. 1991)).  "Where an ERISA plan expressly affords discretion to a plan trustee to make benefits determinations, a court reviewing the plan administrator's actions applies an arbitrary and capricious standard of review."  *Id.* at *8 (citation omitted); *see also Davis*, 2015 U.S. Dist. LEXIS 158313 at *36 ("When the plan gives the fiduciary or plan administration discretionary authority, an abuse of discretion standard of review applies.").  As Myers points out, "[t]he plan administrator bears the burden of proving that the arbitrary and capricious standard applies."  *Shelby County Healthcare*, 2008 U.S. Dist. LEXIS 23314 at *8.

To the extent that Anthem contends that an arbitrary and capricious standard of review should be applied in this case, it must provide Myers with a direct citation to the administrative

18

record, specifically, "the plan."   Such a citation "should be all that [Myers] requires to determine if there is any delegation of authority as the standard of review is determined by the terms of the plan itself." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *36.   Similarly, Myers is entitled to the information she seeks regarding the individuals who were involved in denying her claim. Finally, it is worth noting that it is not sufficient for Anthem to point to the entire administrative record for Myers to locate this information.  *See id.* at *13-14 ("A party who seeks to rely upon [] Rule [33(d)] must not only certify that the answer may be found in the records referenced by it, but also must specify where in the records the answers can be found.") (quoting *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 322-23 (C.D. Cal. 2004) (internal citation omitted)).

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 3.

> iv.  **No. 4.  Please state the monthly benefit Plaintiff would be entitled to receive if Plaintiff prevails in this action. The response should include a detailed calculation of the monthly benefit amount with sufficient detail for Plaintiff to recreate the calculation, including the source of each component.**

Anthem states that interrogatory number 4 is among those "requests [that] go far beyond the[] permissible areas of inquiry." (DN 16 at 6.)  Myers states that this is a "simple and straight forward request," and "Anthem cannot reasonably claim this is unknown, let alone too burdensome." (DN 18 at 7.)  She further states that insurers are required to calculate these amounts upon notice of a claim being filed so that they can set aside reserves.  Finally, she argues that this information "will facilitate any future settlement discussions and limit further disputes over the amount due" to her.  *Id.*

Interrogatory number 4 does not fall within any of the categories of permissible inquiry that are identified above, nor does it relate to a conflict of interest on Anthem's part.  Moreover, the Court finds that the question is premature and speculative at this stage in the litigation.  *See, e.g.*, *Mullins*, 267 F.R.D. at 515 (finding that discovery of attorney's fees that defendant sought to discover was "somewhat premature" and denying request for production of such information).

Accordingly, the Motion for Discovery is **DENIED** as to interrogatory number 4.

> **v.  No. 5.  Identify each person who made the final decision to deny Plaintiff's claim. For each person, state their full name, business address, employer, job title (description), relationship to Defendant, and their manager (i.e. supervisor).**

In interrogatory number 5, Myers requests certain identifying information for each person involved in Anthem's decision to deny her claim for benefits.  Anthem does not appear to specifically address this interrogatory in its response.  (*See generally* DN 16.)  Interrogatories that are very similar or identical to number 5 have been deemed permissible in recent decisions from our Court.  *See, e.g.*, *Davis*, 2015 U.S. Dist. LEXIS 158313 at *11-14.  With respect to the categories of discovery that are now routinely deemed permissible, interrogatory number 5 could go to "a history of biased claim denials," *Kasko*, 33 F. Supp. 3d at 788, or "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted."  *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *6 (quoting *Bird*, 2009 U.S. Dist. LEXIS 106301 at *3).

Accordingly, the Court concludes that Myers is entitled to the information she seeks in interrogatory number 5. Again, as is noted above, it is not sufficient for Anthem to merely direct Myers to the administrative record to locate this information.  "'The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which

20

answers cannot be ascertained by a party unfamiliar with them.'" *Mullins*, 267 F.R.D. at 514 (quoting *Cambridge Elecs. Corp.*, 227 F.R.D. at 322-23 (C.D. Cal. 2004) (internal citation omitted)).  "A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded." *Id.*

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 5.

> **vi.  No. 6.   Identify each person who made the final decision to deny Plaintiff's appeal. For each person, state their full name, business address, employer, job title (description), relationship to Defendant, and their manager (i.e. supervisor).**

Interrogatory number 6 is identical to the preceding interrogatory with the exception of seeking information regarding the individuals involved in denying Myers's appeal rather than her initial claim.   For the reasons set forth above with respect to interrogatory number 5, interrogatory number 6 is permissible.

Accordingly, the Motion for Discovery is **GRANTED** with respect to interrogatory number 6.

> **vii.  No. 7.   Describe <u>*in detail*</u> Defendant's compensation practices for disability claim unit personnel.**

In interrogatory number 7, Myers requests detailed information regarding Anthem's compensation practices for disability unit personnel.  Anthem argues in its response that Myers is not entitled to this information because courts have denied ERISA plaintiffs' efforts to obtain individual compensation records.   (DN 16 at 10-11.)   Critically, Myers requests information regarding compensation *practices*, as opposed to compensation for any particular *individuals*. The *Davis* court addressed this issue in detail:

> District courts in the Sixth Circuit have developed a list of permitted areas of inquiry in ERISA discovery.  *Busch*, 2010 U.S.

21

Dist. LEXIS 101881 at *4.  The list includes information relating to "[i]ncentive, bonus or reward programs or systems formal informal for any employees involved in any meaningful way in reviewing disability claims." *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *6 (citation omitted).  Just as courts have a list of areas of inquiry that are discoverable, courts also have a list of areas of inquiry that are not discoverable in ERISA actions.  *Id.*; *see also Busch* [] at *4.  One area of inquiry into which courts do not allow discovery is employee pay records.  *Id.* (first citing *Hays*, 623 F. Supp. 2d at 845; then citing *Myers*, 581 F. Supp. 2d at 915).

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *18.

Anthem is correct that it need not provide information regarding compensation paid to specific employees, as employee pay records are not discoverable.  However, interrogatory number 7 does not request such information; it targets compensation-related programs or systems that apply across the board to its disability claims personnel.  Anthem must provide to Myers information regarding any incentive, bonus, or reward programs or systems for its disability claims personnel.

Accordingly, the Motion for Discovery is **GRANTED** with respect to interrogatory number 7.

### viii.  No. 8.  Describe in detail Defendant's performance review procedures for disability claim unit personnel.

Interrogatory number 8 requests detailed information regarding Anthem's performance review procedures for disability claim unit personnel.  Anthem argues that courts within the Sixth Circuit do not permit such inquiries in ERISA cases on the basis that they go to employee credibility and are not within the delineated scope of permissible ERISA discovery related to alleged conflicts of interest.  (DN 16 at 11-13.)  Anthem is correct: "[C]ourts typically have refused to permit discovery into the areas falling under the general category of 'reviewer

22

credibility' (*e.g.*, without limitation, the reviewers' personnel files or performance reviews, disciplinary actions, board certifications, educational and professional backgrounds), as those areas are usually deemed unlikely to lead to evidence of bias or discrimination." *Thornton*, 2010 U.S. Dist. LEXIS 7221 (W.D. Ky. Jan. 28, 2010).

Nonetheless, as the *Davis* court noted, "some courts' reluctance to grant discovery into a defendant's performance review procedures is tempered when the claimant seeks the information as evidence that a claim's personnel were pressured to deny claims." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *20 (citing *Mulligan*, 271 F.R.D. 584, 594 (E.D. Tenn. 2011) (internal citation omitted). In *Mulligan*, the Eastern District of Tennessee endorsed a "phased discovery process;" it did not allow discovery of performance reviews because insurer's policies expressly prohibited consideration of claims outcomes in performance reviews, but it declined to state that performance reviews could never be discoverable. *See Mulligan*, 271 F.R.D. at 594. In *Davis*, the court stated that it was "persuaded by the *Mulligan* court's analysis and as such permit[ed] discovery" of incentive, bonus, or reward programs or systems – as allowed in this case in relation to interrogatory number 7 – and stated that it may "revisit the issue" if that discovery material "contains information that suggests the influence of bias." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *20-21.

This Court concurs with the *Davis* court that this is a well-reasoned approach. At this juncture, Myers is not entitled to information regarding Anthem's performance review process. However, if discovery related to compensation programs leads to a suggestion of the influence of bias in the disability claims decision process, then the Court is willing to revisit the issue of performance reviews.

Accordingly, the Motion for Discovery is **DENIED** as to interrogatory number 8.

> ### ix.  No. 9.  State and explain in detail Defendant's efforts to minimize and/or eliminate its structural conflict of interest.

In interrogatory number 9, Myers seeks information regarding any efforts by Anthem to minimize and/or eliminate its structural conflict of interest.  Anthem does not appear to address this interrogatory in its response.  In *Raney v. Life Insurance Company of North America*, 2009 U.S. Dist. LEXIS 34098, *8-9 (E.D. Ky. April 20, 2009), the Eastern District of Kentucky permitted discovery on "whether [the defendant] ha[d] taken steps to limit potential bias and promote accuracy," reasoning that "[a]llowing this limited discovery [would] aid the Court in deciding how significant the conflict of interest is in this particular case."  The Court concludes that this interrogatory is directed toward uncovering whether "the employer has made measures to reduce bias and promote accuracy," which is a recognized area of inquiry in an ERISA case in which a conflict of interest is alleged.  *Kasko*, 33 F. Supp. 3d at 788 (citing *Raney*, 2009 U.S. Dist. LEXIS 34098 at *3).

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 9.

> ### x.  No. 10.  State each specific reason supporting Defendant's decision to deny Plaintiff's claim. For each stated reason, identify the specific document in which Defendant notified Plaintiff of the stated reason.

In interrogatory number 10, Myers requests specific reasons asserted by Anthem for its denial of her claim, as well as identification of specific documents in which Anthem purports to have notified Myers of each such reason.  Anthem contends that this is one of Myers's interrogatories that "go[es] far beyond the[] permissible areas of inquiry."  (DN 16 at 7.)

Pursuant to 29 CFR § 2560.503-1(g)(1), "the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination."  This regulation

also requires that the "notification shall set forth, in a manner calculated to be understood by the claimant . . . the specific reason or reasons for the adverse determination." 29 CFR § 2560.503-1(g)(1)(i).  This Court concurs with the *Davis* court that a claimant is "entitled to know whether [the defendant] complied with 29 CFR § 2560.503-1(g)(1), particularly if [the defendant] provided him [or her] with notice of the specific reasons for its denial." *Davis*, 2015 U.S. Dist. LEXIS 158313 at *26.  Consequently, Anthem is required to provide and identify documents in which it informed Myers of its reason(s) for denying Myers's benefits claim.  Anthem need not *restate* each specific reason supporting its decision to deny Myers's claim, but it must identify the documents in which it previously notified Myers of its reasoning.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** with respect to interrogatory number 10.

> xi. **No. 11.  State each specific reason supporting Defendant's decision to deny Plaintiff's appeal. For each stated reason, identify the specific document in which Defendant notified Plaintiff of the stated reason.**

Interrogatory number 11 mirrors the preceding interrogatory except that it seeks Anthem's specific reasons for denying Myers's appeal rather than her initial claim.  The reasoning set forth above regarding number 10 applies equally to number 11.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** with respect to interrogatory number 11.

> xii. **No. 12.   Identify each medical opinion (e.g. medical record review, medical examination, functional capacity evaluation, etc.) Defendant obtained as part of its decision to deny Plaintiff's claim. For each medical opinion:**
>
>> a. **Provide the name of the entity providing the medical opinion (e.g. MES, MCMC, MLS, RRS, etc.);**

25

      **b.   Describe in detail Defendant's relationship with the entity;**

      **c.   Describe in detail Defendant's efforts to ensure the entity provides unbiased medical opinions, the entity complies with the terms of the policy;**

      **d.   Describe in detail the compensation Defendant paid to the entity for the medical opinion;**

      **e.   Describe in detail Defendant's guidelines/instructions provided to the entity concerning the medical opinion.**

In interrogatory number 12, Myers requests a significant amount of information regarding the medical opinions obtained by Anthem in its process of denying her claim. Anthem does not appear to contest Myers's entitlement to such information. (*See generally* DN 16.) Indeed, the Court concludes that Anthem must produce the information requested by Myers in interrogatory number 12. "The history of remuneration flowing to third-party service providers and the statistics concerning the number of claims reviewed in relation to the number of claims denied is now [in light of the *Glenn* decision] 'fair game' for discovery." *Mullins*, 267 F.R.D. at 517; *see also Davis*, 2015 U.S. Dist. LEXIS 158313 at *23 ("ERISA claimants may seek discovery related to 'third-party vendors whose opinions or reports may have been unduly influenced by financial incentives.'") (quoting *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *8). "[I]nformation concerning the economic connection between [a third-party reviewer] and [Anthem] is exactly the type of information relating to potential bias that district courts have now determined to be discoverable in this circuit." *Mullins*, 267 F.R.D. at 517-18. The Court notes that "inquiry into the professional qualifications of [third-party] reviewers appears to remain outside the scope of discovery," however, as the *Mullins* court noted, such credentials are typically set forth on the face of medical reports. *Mullins*, 267 F.R.D. at 517; *see also Davis*, 2015 U.S. Dist. LEXIS

158313 at *23 ("This includes information such as the training and qualifications of the reviewers, whether the reviewers have faced criminal charges, civil suits, or disciplinary action, whether the reviewers failed to become board-certified, or whether the reviewers recently treated patients.") (internal citations omitted).

In answering interrogatory number 12, Anthem shall adhere to the following guidance from the *Davis* court:

> [Anthem] should respond to the interrogator[y] with information concerning its contractual connections to the third parties and the financial payments paid to them annually along with information concerning any documentation of administrative processes designed only to check the accuracy of grants of claims. However, [Anthem] is not required to provide any response with regards to the credibility or professional backgrounds of the third parties. [Anthem] is also not required to provide documents pertaining to other claimants as those documents are not relevant to [Myers's] claims, and they would undoubtedly contain confidential information "that could not be produced without raising serious HIPAA and privacy concerns that make production of such documents far more burdensome than potentially relevant."

*Davis*, 2015 U.S. Dist. LEXIS 158313 at *24 (quoting *Mullins*, 267 F.R.D. at 522).

Finally, to the extent that any of the information requested in this interrogatory and for which a response is required may be found in the administrative record, Anthem must identify its location therein. *See Mullins*, 267 F.R.D. at 514 ("A party that attempts to rely upon Rule 33(d) with a mere general reference to a mass of documents or records has not adequately responded.").

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 12, subject to the parameters set forth herein.

      **xiii.   No. 13.   Identify each medical opinion (e.g. medical record review, medical examination, functional capacity evaluation, etc.) Defendant**

**obtained as part of its decision to deny Plaintiff's appeal. For each medical opinion:**

    **a. Provide the name of the entity providing the medical opinion (e.g. MES, MCMC, MLS, RRS, etc.);**

    **b. Describe in detail Defendant's relationship with the entity;**

    **c. Describe in detail Defendant's efforts to ensure the entity provides unbiased medical opinions, the entity complies with the terms of the policy;**

    **d. State and describe in detail the compensation Defendant paid to the entity for the medical opinion;**

    **e. Describe in detail Defendant's guidelines/instructions provided to the entity concerning the medical opinion.**

Interrogatory number 13 is identical to number 12, but for its reference to the denial of Myers's appeal rather than her initial claim. For the reasons set forth above regarding interrogatory number 12, Myers is entitled to receive the information she seeks in number 13.

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 13, subject to the parameters set forth above in the discussion of interrogatory number 12.

    **xiv.  No. 14.  With respect to each entity providing a medical opinion:**

    **a. State the number of medical opinions provided to Defendant;**

    **b. State the total compensation Defendant paid to the entity to date;**

    **c. State the number of medical opinions that supported Defendant's decision to deny a claim;**

    **d. State the number of medical opinions that did not support Defendant's decision to deny a claim;**

In interrogatory number 14, Myers requests statistical information regarding third-party vendors.  Again, Anthem does not appear to dispute Myers's right to such information; indeed, it recognizes that "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted" is one of the "generally permissible areas" of inquiry recognized by district courts in the Sixth Circuit.  (DN 16 at 7.)  By propounding interrogatories such as number 14, ERISA plaintiffs are attempting to establish a history of biased claim administration.  *Kasko*, 33 F. Supp. 3d at 789.  "District courts in Kentucky widely acknowledge that the statistical information and financial information sought by [Myers] in interrogator[y number] 14[] is permissible in discovery."  *Davis*, 2015 U.S. Dist. LEXIs 158313 at *29 (citing *Gluc*, 2015 U.S. Dist. LEXIS 104242 at *6; *Kasko*, 33 F. Supp. 3d at 789; *Busch*, 2010 U.S. Dist. LEXIS 101881 at *4).

Looking to the *Davis* court once again, the following reasoning is instructive:

> Courts reason that "if [insurers] relied on third-party reviewers whose opinions or reports may have been unduly influenced by financial incentives, the [c]ourt would benefit from information revealing the compensation arrangement." *Kasko*, 33 F. Supp. 3d at 789 (quoting *Crider v. Life Ins. Co. of N. Am.*, 2008 U.S. Dist. LEXIS 6715, *6 (W.D. Ky. Jan. 29, 2008).  Notably, "[t]he financial incentives, combined with the physicians' recommendations, could assist the Court in resolving an allegation of biased claim administration." *Id.*  Courts have allowed discovery of this statistical information to span up to a ten-year period.  *See id.* (citing *Pemberton*, 2009 U.S. Dist. LEXIS 2070, *4.)  As this Court stated previously, courts in the Sixth Circuit generally allow discovery of the following:
>
> > • "contractual connections between [plan administrator/payor] ... and the reviewers utilized in Plaintiff's claim . . . and financial payments paid annually to the reviewers from the [administrator/payor]." *Pemberton*, 2009 U.S. Dist. LEXIS 2070, *3.

• "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

• "number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled." *Id.*

This Court finds the reasoning of its fellow district courts in Kentucky persuasive and, therefore, will require Hartford to provide the financial and statistical information Davis has requested in interrogatories 14-18 with the caveat that Hartford need not provide information that spans a time period longer than ten years.

*Id.* at *29-30. Likewise, this Court finds that the information sought in interrogatory number 14 is well within the scope of discovery requests deemed permissible by district courts in our circuit. The Court further finds that it is appropriate to limit Anthem's obligation to respond to a ten-year time period.

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 14 for the years 2006 to present.

xv. **No. 15. For each individual providing a medical opinion ("reviewer"):**

a. **Provide the reviewer's full name, business address, employer, job title (description), and relationship (if any) with Defendant;**

b. **State and explain in detail the process by which the reviewer was selected;**

c. **State and explain in detail the steps taken to ensure the reviewer had "appropriate training and experience in the field of medicine involved in the medical judgment" as required by 29 CFR 2560.503-1.**

d. **State the number of medical opinions the reviewer has provided to Defendant;**

      **e.**    **State the number of medical opinions the reviewer has provided to Defendant that supported Defendant's decision to deny a claim;**

      **f.**    **State the number of medical opinions the reviewer has provided to Defendant that did not support Defendant's decision to deny a claim;**

      **g.**    **State and describe in detail the compensation reviewer was paid for the medical opinion provided to Defendant;**

      **h.**    **State the total compensation reviewer has been paid to date for medical opinions provided to Defendant.**

      **i.**    **State and explain in detail the steps taken to ensure the reviewer's report was not altered and/or edited prior to submission to Defendant.**

In interrogatory number 15, Myers seeks information regarding the individuals who provided medical opinions in her case. Much of the information she seeks is permissible for the same reasons that the Court grants the Motion for Discovery with respect to interrogatory numbers 12, 13, and 14. However, the Court must limit number 15 to some extent.

In a recent memorandum opinion and order entered by United States Magistrate Judge H. Brent Brennenstuhl, *Owens v. Liberty Life Assurance Company of Boston*, Civil Action No. 4:15-cv-71-JHM (DN 26), the court addressed an interrogatory that was identical to interrogatory number 15 in this case. (*See* DN 39 (filing *Owens* opinion as supplemental authority).) In *Owens*, the court reasoned that the statistical information requested in interrogatory number 15 is largely admissible. However, the court disallowed the subparts seeking information as to "the process by which the reviewer was selected and the steps taken to ensure the reviewer has appropriate medical training" – here, subparts (b) and (c) – concluding that they constituted "impermissible 'reviewer credibility' inquiries." (DN 39-1 at 18; *Owens*, Civil Action No. 4:15-

cv-00071-JHM.)  The court further limited the defendant insurer's obligation to respond to a time period of ten years.  The Court concurs with the *Owens* court's analysis and concludes that, with the exceptions of subparts (b) and (c), the information sought in interrogatory number 15 is permissible pursuant to recent precedent from district courts in our circuit.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** as to interrogatory number 15.  Subparts (b) and (c) are disallowed, and Anthem need only provide responsive information from 2006 to present.

> xvi. **No. 16. State and describe in detail, Defendant's procedures "governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations (hereinafter collectively referred to as claims procedures)."**

In interrogatory number 16, Myers requests detailed information as to Anthem's procedures regarding claims procedures, which it defines as those procedures governing filing of benefits claims, notifications of determinations, and appeals of adverse determinations.  In support of this interrogatory, Myers cites 29 CFR 2560.503-1(b), which requires plans to establish and maintain reasonable procedures governing the filing of benefit determinations, and appeal of adverse benefit determinations.

Anthem appears not to dispute this particular interrogatory in its response.  (*See generally* DN 16.)  However, the Court finds persuasive the reasoning employed in two recent decisions denying similar or identical interrogatories on the basis that they were not narrowly tailored to the facts of the case.  In *Davis*, the court concluded that a very similar request was "overly broad" in that it sought general claims procedures without any showing that such procedures were relied upon or considered in deciding the plaintiff's claims.  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *31-34; *see id.* at *33-34 ("In addition to the cases that Hartford cites in its Response,

the Court found several other cases in which courts have refused to compel production of an insurer's entire manual or guidelines or other administrative materials and instead required production only of those administrative materials used in processing the claimant's claim for benefits.") (citing *Hatfield v. Life Ins. Co. of N. Am.*, 2015 U.S. Dist. LEXIS 131022 (E.D. Ky. Sept. 9, 2015); *McQueen*, 595 F. Supp. 2d at 755 n.2; *Byrd*, 2008 U.S. Dist. LEXIS 29615 at *2). In *Owens*, the court denied a motion for discovery related to an interrogatory that was *identical* to interrogatory number 16 due to the plaintiff's "failure to address the specific relevance of the request set forth in [the] interrogatory[.]"  (DN 39-1 at 19; *Owens*, Civil Action No. 4:15-cv-00071-JHM.)

Accordingly, the Motion for Discovery is **DENIED** as to interrogatory number 16.

> **xvii.  No. 17. State and describe in detail the specific training Defendant provides to its disability claims personnel, including those individuals involved with Plaintiff's claim.**

In interrogatory number 17, Myers requests information on the training provided by Anthem to its disability claims personnel, including the individuals involved in her claim. Anthem argues that Myers is not entitled to discovery on this issue, as it is simply another attempt to obtain information that goes to the credibility of reviewers.  (DN 16 at 13-14.) Anthem is correct in part.

As the *Gluc* and *Davis* courts discussed in some depth, "[c]ourts typically refuse to permit discovery into areas falling under the general category of reviewer credibility."  *Gluc*, 309 F.R.D. at 414 (quoting *Thornton*, 2010 U.S. Dist. LEXIS 7221 at *3) (quotation marks omitted). "Information regarding the training and qualifications of the reviewers is unlikely to lead to evidence concerning either the conflict of interest or bias;" therefore, courts have routinely

refused to permit discovery on such issues.  *Pemberton*, 2009 U.S. Dist. LEXIS 2070 at *4 (citation omitted); *see also Bird*, 2009 U.S. Dist. LEXIS 106301, *9 (including "information regarding the training and qualifications of the [r]eviewers" among improper areas of inquiry, absent "further showing of relevance").  Despite the general disallowance of discovery requests regarding training, such requests *are* permissible when limited to information relevant to the particular plaintiff involved.  Specifically, a plaintiff may request training supplied to disability claims personnel who participated in the handling of that plaintiff's claim.  *See Mullins*, 267 F.R.D. at 520 ("Mullins is entitled to know specifically what training such claims professionals received relevant to the subject matter of the interrogatory . . . .); *id.* at 521 (stating that production of materials regarding claims personnel training "would not appear to the Court to necessarily bear directly on any potential bias of those employees who were directly involved in the administration of Mullins'[s] own claim").

In this case, interrogatory number 17 is not limited to those individuals who participated in the determination of Myers's claim.  Based on the foregoing discussion, Anthem is not required to respond as to any general training procedures; but rather, it must provide information regarding relevant training undergone by personnel who were involved in Myers's case.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART**.  It is **granted** insofar as it relates to the personnel who were involved in denying Myers's claim or appeal and **denied** as to any other individuals or as to generally applicable training procedures.

> xviii.  **No. 18.  Identify each "document, record or other information" that demonstrates Defendant's "compliance with the administrative processes and safeguards required" by the claim regulations when "making the benefit determination."  For each document identified,**

34

> **state and explain in detail Defendant's efforts to comply with the administrative processes.**

In interrogatory number 18, Myers requests that Anthem identify all materials demonstrating its compliance with administrative processes and safeguards when making her benefits determination, as well as its efforts to comply therewith.  As is noted above, district courts in this circuit recognize the following as among the permissible areas of inquiry: "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate the plaintiff's claim)." *Clark*, 871 F. Supp. 2d at 660.  In *Owens*, the court again dealt with an interrogatory identical to number 18 in this case.  The court's analysis is instructive:

> The district court in *Howard v. Hartford Life & Accident Ins. Co.*[] ruled that it was reasonable to require production of "documents that reflect Defendant's disability claims procedures, if any, that 'contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.'"  2011 U.S. Dist. LEXIS 68951, *9 (M.D. Fla. June 27, 2011) (quoting 29 CFR 2560.503-1(b)(5)).  This recognition of a general right to discovery of administrative processes and safeguards is echoed in *Mullins*, in which the court granted a motion to compel a defendant's description in detail of its administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accordance with the governing plan documents.  *Mullins*, 267 F.R.D. at 519-20.

(DN 39-1 at 20, *Owens*, Civil Action No. 4:15-cv-00071-JHM.)

Based on the foregoing, the Court concludes that the information that Myers requests in interrogatory number 18 is discoverable, and therefore, the Motion for Discovery is **GRANTED** as to interrogatory number 18.

35

xix. **No. 19.   Identify each document which "constitutes a statement of policy or guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination."   For each document identified, state and explain in detail Defendant's efforts to comply with the policy statements and/or guidance.**

Finally, in interrogatory number 19, Myers requests documents constituting a statement of policy or guidance with respect to the plan concerning her denied benefit, regardless of whether the policy or guidance was relied upon in denying her claim.   She further requests explanations as to Anthem's efforts to comply therewith.   In support of this interrogatory, Myers cites 29 CFR 2560.503-1(m)(8)(iv), which provides as follows:

> A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information . . . [i]n the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 CFR 2560.503-1(m)(8)(iv).

Anthem does not appear to address interrogatory number 19 in its response to the Motion for Discovery.   (*See generally* DN 16.)   The *Owens* court addressed an identical interrogatory, finding that the regulation cited by Myers recognizes, by its terms, that the materials covered by this interrogatory are "relevant." (DN 39-1 at 21, *Owens*, Civil Action No. 4:15-cv-00071-JHM.) The court granted the motion for discovery as to that interrogatory, noting that the defendant "failed to articulate a basis . . . for why it should not identify the subject documents."   (*Id.*)   This Court concurs with the *Owens* court's reasoning.

Accordingly, the Motion for Discovery is **GRANTED** as to interrogatory number 19.

36

C.  Requests for Production

Myers's requests for production begin with the following general request: "Defendant is requested to produce *each material document* for the following areas of inquiry[.]"  (DN 14-1 at 5.)

### i.  No. 1.  Defendant's answer to the complaint, including defenses and affirmative defenses.

The rationale for granting the Motion for Discovery in relation to interrogatory number 2, seeking a statement of reasons underlying Anthem's defenses, applies with equal force to request for production number 1.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production 1.

### ii.  No. 2.  Defendant's answers and responses to written discovery.

Myers is entitled to production of any and all documents upon which Anthem relies in crafting its answers to interrogatories.  Specifically, to the extent that the Court has ordered Anthem in the instant memorandum opinion and order to respond to Myers's interrogatories, Anthem must produce any and all documents – outside of the administrative record – upon which it relies in responding to such interrogatories.  *See Mullins*, 267 F.R.D. at 520 (requiring the defendant to produce any documents to which it "in its interrogatory responses referred . . . outside the administrative record); *see also* DN 39-1 at 22, *Owens*, Civil Action No. 4:15-cv-00071-JHM.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production 2, to the extent that it references such interrogatories related to which the Court has ordered Anthem to respond, and to the extent that Anthem refers to documents outside of the administrative record in crafting such responses.

### iii.  No. 3.  Each audio and/or video recording relating to Plaintiff's claim or appeal.

Anthem does not appear to object to request for production 3, and the Court is not otherwise aware of any reason why Anthem should not be required to produce the materials requested therein, to the extent that they exist and are in Anthem's custody or control.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production 3.

### iv.  No. 4.  Correspondence with legal counsel *prior* to the date of the lawsuit.

It appears to the Court from the citations offered by Myers in support of request for production 4 that the premise for this request is her now-defunct claim under 29 U.S.C. § 1132(a)(3).  The Court previously ordered that Anthem need not respond to any discovery requests related to that claim.  (*See* DN 32.)

Accordingly, the Motion for Discovery is **DENIED** as to request for production 4.

### v.  No. 5.  Each document demonstrating any delegation of discretionary authority.

As is explained in this memorandum opinion in reference to interrogatory number 3, the plan itself should be all that a plaintiff requires to determine if there is any delegation of discretionary authority.  Additionally, in granting the Motion for Discovery with respect to interrogatory number 3, the Court ordered Anthem to point to the precise location in the administrative record where any delegation of discretionary authority may be found.

Accordingly, the Motion for Discovery is **DENIED** as to request for production number 5.

### vi.   No. 6.  If documents have been withheld based on privilege, a privilege log.

Anthem does not specifically address request for production number 6 in its response (DN 16) to the Motion for Discovery.  However, it does purport to retain the right to "make any additional objections allowable under FRCP 26 and all applicable case[]law, including but not limited to . . . work product and/or attorney-client privilege, and any other applicable privileges, after review of the pertinent documents."  (DN 16 at 18.)

Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure imposes on Anthem a duty to disclose the existence and identity of any documents which are relevant to a discovery request but which have been withheld due to a claim of privilege or work product protection.  Further, the rule directs the withholding party to "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  It is possible that there are no documents in this case that fall within the scope of Rule 26(b)(5)(A), but to the extent that such documents exist, Anthem must identify them through a privilege log.  (*See* DN 39-1 at 24, *Owens*, Civil Action No. 4:15-cv-00071-JHM (citing *Jones v. Life Ins. Co. of N. Am.*, 2015 U.S. Dist. LEXIS 134945, *9 (N.D. Cal. Oct. 2, 2015)).)

Accordingly, the Motion for Discovery is **GRANTED** as to request for production 6.

### vii.   No. 7.   Documents, records, and other information relevant to the Plaintiff's claim for benefits.

Request for production number 7 is a broad request for all records and other materials relevant to Myers's benefits claim.  In support of this request, Myers cites 29 CFR 256.503-

1(h)(iii), which provides that "a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." As the *Davis* court cautioned, "discovery is to be limited to the conflict of interest and allegation of bias." *Davis*, 2015 U.S. Dist. LEXIS 158313, *9. Discovery requests seeking "any and all relevant" documents or other materials are often overbroad and vague. *See, e.g.*, *Babcock Power, Inc. v. Kapsalis*, 2015 U.S. Dist. LEXIS 172773, *15-16 (W.D. Ky. Dec. 29, 2015). As is discussed herein, Myers is entitled to receive a copy of her entire claims file. However, the Court finds that she is not entitled to a "global production of all documents 'relevant to her claim' [as] she has failed to demonstrate a relationship between the request and the subjects of discovery in this case." (DN 39-1 at 25; *Owens*, Civil Action No. 4:15-cv-00071-JHM.)

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** as to request for production number 7. It is **granted** insofar as Myers seeks a copy of her entire claims file. It is **denied** insofar as she requests a global production of all documents relevant to her claim.

> **viii.   No. 8.  Internal rules, guidelines, protocols or other similar criterion relied upon in making the adverse determination on Plaintiff's claim.**

In request for production number 8, Myers seeks any internal rules, guidelines, protocols, and the like upon which Anthem relied in denying her claim. A claimant is entitled to production of administrative materials used in processing *her claim* for benefits, but is not entitled to administrative materials that were not relied upon in relation to her case. *See, e.g.*, *Davis*, 2015 U.S. Dist. LEXIS 158313, *34 ("[T]his Court found several other cases in which courts have refused to compel production of an insurer's entire manual or guidelines or other

40

administrative materials and instead required production only of those administrative materials used in processing the claimant's claim for benefits.") (citations omitted).

Accordingly, the Motion for Discovery is **GRANTED** as to request for production number 8.

### ix. No. 9.  Claim administration materials and manuals utilized by, or available to, the long term disability claims unit.

In request for production number 9, Myers seeks claim administration materials and manuals utilized by, or available to, the long term disability claims unit.  Based on the same reasoning applied in relation to request for production numbers 7 and 8, the Court finds that Myers is entitled to production of claim administration materials and manuals that were used in processing Myers's claim.  She is not entitled to production of such materials if they were not utilized by the claims unit in relation to her claim.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** as to request for production number 9.  It is **granted** insofar as it requests claim administration materials and manuals utilized by the long term disability claims unit in processing Myers's claim.  It is **denied** insofar as it requests such materials that were merely available to, but not utilized by, the claims unit in processing Myers's case; it is also denied insofar as it requests such materials that were utilized by or available to the claims unit in relation to other cases.

### x. No. 10. Training materials and manuals utilized by, or available to, the long term disability claims unit.

Request for production number 10 is identical to number 9, except that the former requests *training* materials and manuals.  The reasons set forth herein in relation to request for

production numbers 7, 8, and 9 applies equally to number 10.

Accordingly, the Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** as to request for production number 10.  It is **granted** insofar as it requests training materials and manuals utilized by the long term disability claims unit in processing Myers's claim.  It is **denied** insofar as it requests such materials that were merely available to, but not utilized by, the claims unit in processing Myers's case; it is also denied insofar as it requests such materials that were utilized by or available to the claims unit in relation to other cases.

### xi.  No. 11. Disability claim unit organizational structure.

In request for production number 11, Myers requests that Anthem provide documents related to the disability claim unit organizational structure.  The Court finds persuasive the *Davis* court's analysis on an identical request:

> Davis correctly notes that the court in *Gluc* recently found that "the organizational structure of the claims and appeals units is fair game for discovery."  2015 U.S. Dist. LEXIS 104242, *7.  Like the court in *Gluc*, this Court agrees that Davis "is entitled to have a basic understanding of the organizational structure of both the claims and appeals units" of Hartford.  This information will allow Davis to ensure that there is not substantial overlap in violation of 29 CFR 2560.503-1(h)(3)(ii), which mandates that the employee who reviews an adverse benefits determination that is the subject of an appeal nor is he or she the subordinate of such individual.
>
> Davis's request is relevant, and the documents will be helpful in his determination of whether or not Hartford's decision makers are in fact separate and distinct.  However, as the Court cautioned in *Gluc*, Hartford "is not required to produce every single document within its possession, custody or control that may touch in any fashion upon the structure of the claims unit and appeals unit." *Id.* at *8.  29 CFR 2560.503-1(h)(3)(ii) is meant to ensure that the same individual does not initially deny a claimant's benefits and then also consider the claimant's appeal. *Id.*

*Davis*, 2015 U.S. Dist. LEXIS 158313, *37-38.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production number 11, with the caveat that Anthem "need only provide [Myers] with documents that identify the individuals along with their job titles in [] the claims unit . . . at the time [Anthem] denied [Myers's] claim for benefits . . . ." *Id.* at *38-39.

### xii.   No. 12. Disability appeal unit organizational structure.

Request for production number 12 is identical to number 11, except that the former applies to the organizational structure of the *appeal* unit rather than the claim unit.  The same reasoning applies to both requests.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production number 12, with the caveat that Anthem "need only provide [Myers] with documents that identify the individuals along with their job titles in . . . the appeals unit . . . at the time [Anthem] denied [Myers's] . . . appeal of the adverse benefits decision." *Id.* at *38-39.

### xiii.   No. 13. Specific compensation, including calculations and supporting documents, for each person *involved with Plaintiff's claim*.

In request for production number 13, Myers requests specific information and documents related to the compensation of the individuals involved with her claim.  Anthem strongly objects to this request as being beyond the scope of permissible discovery in ERISA actions.  (DN 16 at 10-11.)  As is discussed above in relation to interrogatory number 7, ERISA plaintiffs are not entitled to discovery regarding the compensation of individual employees.

Accordingly, for the reasons set forth above in relation to interrogatory number 7 regarding compensation of *individual employees*, the Motion for Discovery is **DENIED** as to request for production number 13.

xiv.   **No. 14. Performance reviews for each person *involved with Plaintiff's claim*.**

In request for production number 14, Myers requests performance reviews for each individual involved in her claim.  The Court's analysis above in relation to interrogatory number 8 is equally applicable to request for production number 14.

Accordingly, for the reasons set forth above in relation to interrogatory number 8, the Motion for Discovery is **DENIED** as to request for production number 14.

xv.   **No. 15. Each document identifying Defendant's administrative processes and safeguards designed to ensure the fair and proper administration of claims.**

In request for production number 15, Myers requests production of documents identifying Anthem's administrative processes and safeguards designed to ensure that the administration of claims is fair and proper.  The Court's analysis above in relation to interrogatory number 18 is equally applicable to request for production number 15.

Accordingly, for the reasons set forth above in relation to interrogatory number 18, the Motion for Discovery is **GRANTED** as to request for production number 15.

xvi.   **No. 16. Each entity providing a medical opinion ("reviewer"), including, but not limited to:**

     a.   **Contracts – including, but not limited to, compensation and instructions or guidelines given on how to perform review;**

     b.   **Draft and final reports, including all edits, audits, and quality review;**

     c.   **Dictated opinions (recordings and actual draft from dictation);**

     d.   **Correspondence between the entity and insurer (emails, notes, letters, etc.);**

        **e.  Documents provided to the entity relating to Plaintiff's claim;**

        **f.  Documents identifying the number of times Defendant has used the entity and the number of times the entity has found the claimant disabled or able to perform a sedentary occupation.**

In request for production number 16, Myers seeks production of documents regarding entities that provided medical opinions related to her claim.  The request encompasses contracts, draft and final reports, dictated opinions, correspondence, documents provided to the entity related to Myers's claim, and documents showing statistics regarding the entity's findings in past claims.  Consistent with the Court's findings above regarding the relationship between Anthem and third-party reviewers, and consistent with the Court's sister courts' rulings in *Gluc*, *Davis*, and *Owens*, the materials sought in request for production number 16 are discoverable.  The list of permitted areas of inquiry recognized by district courts in the Sixth Circuit "includes information relating to the '[c]ontractual connections between [Anthem] and the reviewers utilized in the plaintiff's claim, and financial payments paid annually to the reviewers.'"  *Davis*, 2015 U.S. Dist. LEXIS 158313, *23 (citing *Busch*, 2010 U.S. Dist. LEXIS 101881, *4) (citation omitted).  Finally, the limitations set forth above regarding (1) the non-discoverability of matters going to credibility or professional backgrounds of the third parties; and (2) the ten-year time frame for statistical information apply to request for production number 16.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production number 16, subject to the limitations set forth above regarding (1) third-party reviewers' credibility and professional backgrounds; and (2) the ten-year time frame for statistical information.

xvii. **No. 17. Each individual providing a medical opinion ("reviewer"), including, but not limited to:**

a. **Contracts – including, but not limited to, compensation and instructions or guidelines given on how to perform review;**

b. **Draft and final reports, including all edits, audits, and quality review;**

c. **Dictated opinions (recordings and actual draft from dictation);**

d. **Correspondence between the reviewer and insurer (emails, notes, letters, etc.);**

e. **Documents provided to the reviewer relating to Plaintiff's claim;**

f. **Documents identifying the number of times Defendant has used the reviewer and the number of times the reviewer has found the claimant disabled or able to perform a sedentary occupation.**

Request for production number 17 is identical to number 16, except that the former relates to individual medical reviewers rather than the entities providing the medical opinions. Consequently, the same reasoning applied to number 16 applies to number 17.

Accordingly, the Motion for Discovery is **GRANTED** as to request for production number 17, subject to the limitations set forth above regarding (1) third-party reviewers' credibility and professional backgrounds; and (2) the ten-year time frame for statistical information.

xviii. **No. 18. For each review provided to Defendant by each entity used in this Plaintiff's claim and appeal, in the relevant time period, provide a copy of the final report. To protect confidentiality, Defendant may redact the individual's name, SSN, and date of birth, provided there is means by which to identify the individual should the need arise.**

In request for production number 18, Myers requests copies of each review provided in relation to request for production number 16.  Myers states that Anthem may redact the name, Social Security Number, and date of birth of the individual subjects of such reviews, so long as there is some means to identify the individuals if needed.

The Court touched on this issue in its discussion of interrogatory number 12.  As is stated above, Anthem is "not required to provide documents pertaining to other claimants as those documents are not relevant to Myers's claims, and they would undoubtedly contain confidential information 'that could not be produced without raising serious HIPAA and privacy concerns . . . .'"  *Davis*, 2015 U.S. Dist. LEXIS 158313 at *24 (quoting *Mullins*, 267 F.R.D. at 522). Moreover, Myers's direction that Anthem is free to redact sensitive identifying information – yet presumably create another system to identify claimants included in the requested documents – does not entitle her to receive these documents.  The process of redacting sensitive information would "make production of such documents far more burdensome than potentially relevant."[6] *Id.* (quoting *Mullins*, 267 F.R.D. at 522).

---

[6]      The Court notes that the supporting citations provided by Myers in support of request for production numbers 18 and 19 are, at best, of questionable relevance, and at worst, misleading.  For example, the quotation to *Back v. Hartford Life & Accident Insurance Company*, 2010 U.S. Dist. LEXIS 144907, *14 (E.D. Mich. July 1, 2010), states a general observation and is not related to the documents requested in numbers 18 and 19.  (*See* DN 14 at 10 n.19.)  The quotation to Knox v. Prudential Insurance Company of America, 2014 U.S. Dist. LEXIS 42897, 11 (W.D. Ky., Mar. 28, 2014), is from a single sentence regarding three requests for production and does not include any context as to what materials the requesting party sought.  (*See id.*)  Finally, the quotation from B*enson v. Hartford Life & Accident Insurance Company*, 2011 U.S. Dist. LEXIS 9808, 32 (D. Utah, Jan. 28, 2011) is, by its terms, inapplicable to request for production numbers 18 and 19, which seek individual reviews, whereas the *Benson* court was specifically addressing "broad, general, non-case specific information . . . ."  (*See id.*)  Myers would do

Accordingly, the Motion for Discovery is **DENIED** as to request for production number 18.

        xix.   **No. 19. For each review provided to Defendant by each individual medical reviewer used in this Plaintiff's claim and appeal, in the relevant time period, provide a copy of the final report. To protect confidentiality, Defendant may redact the individual's name, SSN, and date of birth, provided there is means by which to identify the individual should the need arise.**

Request for production number 19 is identical to request for production number 18, except that the former relates to individual reviewers rather than the entities providing the medical opinions. Consequently, the same reasoning applied to number 18 applies to number 19.

Accordingly, the Motion for Discovery is **DENIED** as to request for production number 19.

**2.   Motion to Strike and Motion for Sanctions**

The events and arguments underlying Anthem's motion to strike (DN 36) are set forth above in the "Background" section. Anthem argues that Myers's reply in support of her use of the *Davis* decision as supplemental authority (DN 35) is a poorly disguised motion for sanctions pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure. Myers responds that her request for sanctions should not be construed as a motion to which the terms of Rule 11(c)(2) apply; rather, she has asked the Court to issue sanctions on its own initiative pursuant to Rule 11(c)(3).

Contrary to Myers's assertions, her request for sanctions in her reply in support of *Davis* as supplemental authority (DN 35) *is* effectively a motion for sanctions pursuant to Rule 11(c)(2). While Myers professes to seek an award of her attorneys' fees and costs in relation to

---

well to ensure that her citations to and quotations from case law are accurate and applicable to the propositions for which they are used.

the Motion for Discovery (DN 14) on the basis of Rule 11(c)(3), that rule, by its terms, does not apply here, because such an award would be based on Myers's request for a finding of a violation of Rule 11(b)[7] and not on the Court's own initiative.  *Compare* Fed. R. Civ. P. 11(c)(2)("A motion for sanctions must . . . describe the specific conduct that allegedly violates Rule 11(b).") *with id.* at (c)(3) ("*On its own*, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).") (emphasis added).  In this case, not only has Myers sought an order of sanctions rather than the Court raising the issue *sua sponte*, at no time has the Court entered an order for Anthem to show cause as to why it is not in violation of Rule 11(b), which is the proper course for imposition of sanctions pursuant to Rule 11(c)(3).

Myers's motion for sanctions is procedurally deficient and, therefore, must be denied. Rule 11(c)(2) requires as follows: "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).  Here, Myers filed her motion for sanctions within her reply in support of her submission of *Davis* as supplemental authority.  Thus, she failed to comply with Rule 11(c)(2)'s requirement that a motion for sanctions be filed separately from other court filings.  Additionally, Rule 11(c)(2) requires that a party first serve its motion for sanctions on the opposing party and then file it with the court only if "the challenged paper, claim, defense, or denial is [not] corrected within 21 days after service or within another time the court sets."  *Id.*; Fed. R. Civ. P. 11 advisory committee note (1993) ("These provisions are intended to provide a type of 'safe

---

[7]     The Court construes the motion for sanction as alleging a violation of Rule 11(b)(2), which provides that a paper presented by an attorney to the Court is deemed to include a certification  that "the claims, defense, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation."). In this case, Anthem asserts that Myers's counsel did not contact its counsel prior to filing the motion for sanctions; Myers does not dispute this claim. Accordingly, the Court finds that Myers failed to file her motion for sanctions separately from any other filings *and* that she failed to comply with Rule 11(c)(2)'s "safe harbor" requirement.

The Court could deny the motion for Rule 11 sanctions for the reasons stated above. However, it is worth noting that the motion for sanctions fails substantively as well. The basis for the motion for sanctions is that Anthem has engaged in "continued obstruction and delay" by asserting "objections [that are] entirely without merit and not offered in good faith." (DN 35 at 2.) The Court disagrees. As Anthem points out in its responses to the motions for discovery and sanctions, it did not respond to Myers's discovery requests due to the Court's language in its scheduling order (DN 9), which required Myers to seek the Court's permission to pursue discovery on a limited set of issues subsequent to her review of the administrative record. Rather than adhere to this course of action, Myers filed the Motion for Discovery without seeking permission from the Court to propound discovery requests. Based on the foregoing, the Court finds that the Anthem's failure to respond to Myers's discovery requests without express Court authorization for those requests was reasonable.[8]

Moreover, the Court takes issue with Myers's bluster regarding Anthem's purported bad faith. (*See, e.g.*, DN 35 at 1 ("Anthem demanded the Court deviate from the normal schedule in

---

[8]  As is noted above, in the interest of expediency in this case, which has already been drawn out significantly, the Court has chosen to address the Motion for Discovery on the merits rather than require Myers to follow the dictates of that scheduling order (DN 9) and seek Court permission to serve its discovery requests.

ERISA cases and instead force Ms. Myers to waste significant time and resources briefing an issue already decided in this Court, and in other courts throughout the Sixth Circuit.").)   In her briefing on the motion for sanctions (DN 35, 38), Myers dramatically oversimplifies the current state of the law on discovery in ERISA cases.   As the Court's analysis of the Motion to Discovery – as well as the sheer length of the memorandum opinion thereon – demonstrates, the law is currently evolving in the wake of the *Glenn* case.   The law is far from settled as to every aspect of the discovery requests propounded by Myers.   Additionally, the simple fact that the Court has denied the Motion for Discovery as to a number of Myers's discovery requests makes clear that Anthem's opposition thereto was far from meritless or futile.

Finally, the Court finds that the motion for sanctions also fails under 29 U.S.C. § 1927 and Rule 26(g) of the Federal Rules of Civil Procedure.   Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."   29 U.S.C. § 1927.   Rule 26(g) provides that by signing responses to discovery requests (among other discovery-related papers), an attorney certifies that the response or objection is "(i) consistent with the[] rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonably nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the litigation."   Fed. R. Civ. P. 26(g)(1)(B)(i)-(iii).   For the reasons set forth above in relation to Rule 11(b)(2), the Court finds

51

that Anthem's opposition to Myers's discovery requests was offered in good faith and did not unduly delay the litigation or otherwise prejudice Myers.  The Court does note, however, that, having provided a roadmap for the parties as to the acceptable scope of discovery in this case, it expects the parties to proceed with discovery with little or no Court intervention.

Accordingly, the Court concludes that Myers's motion for sanctions, as it appears within her reply in support of her use of *Davis* as supplemental authority (DN 35), is **DENIED**.  The Court further concludes that Anthem's motion to strike (DN 36) is **DENIED AS MOOT** in light of the denial of the motion for sanctions.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Myers's Motion for Discovery (DN 14) is **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth above.

Specifically, IT IS HEREBY ORDERED as follows:

(1)     The Motion for Discovery is **GRANTED** as to **interrogatory** numbers 1, 2, 3, 5, 6, 7, 9, 12, 13, 14, 18, and 19 and **request for production** numbers 1, 2, 3, 6, 8, 11, 12, 15, 16, and 17, subject to the instructions and limitations set forth above.

(2)     The Motion for Discovery is **DENIED** as to **interrogatory** numbers 4, 8, and 16 and **request for production** numbers 4, 5, 13, 14, 18, and 19.

(3)     The Motion for Discovery is **GRANTED IN PART** and **DENIED IN PART** as to **interrogatory** numbers 10, 11, 15, and 17 and **request for production** numbers 7, 9, and 10. Both parties shall be mindful of the instructions and limitations set forth above in relation to such interrogatories.

(4)     Anthem shall serve its responses to Myers's discovery requests **no later than thirty (30) days after the entry of this order**.  Anthem may disregard the instructions provided by Myers in the text boxes that appear at the top of the page in Myers's interrogatories and requests for production.


Additionally, IT IS HEREBY ORDERED that the Court construes Myers's reply in support of her use of *Davis* as supplemental authority (DN 35) as a motion for sanctions. Myers's motion for sanctions is **DENIED** for the reasons set forth above.

Finally, IT IS HEREBY ORDERED that Anthem's motion to strike (DN 36) is **DENIED AS MOOT** in light of the Court's ruling on the motion for sanctions.


cc:  Counsel of record